[No. 5339.   Decided May 1, 1905.]

S. ANDREW HARTMAN, *Respondent,* v. WORTH BELDEN *et al., Appellants.*[1]

ACCOUNTING — CONTRACTS—PLEADINGS—VARIANCE—FAILURE OF PROOF. In an action for an accounting, in which one of the defendants was the agent and employee of the plaintiff and the other defendant, it is error to render a joint and several judgment against the defendants, where the complaint alleges a contract between the plaintiff as one party, and the defendants jointly as the other parties, and the proof showed a contract between the defendant agent as one party, and his two employers jointly, as the other party; since the same is a fatal variance amounting to a failure of proof under Bal. Code, § 4951.

[1]Reported in 80 Pac. 806.

ACCOUNTING—SALE OF MINING STOCK BY ONE OF TWO PROMOTERS—
CONTRACT TO SELL JOINT STOCK—SALE OF INDEPENDENT STOCK—
DAMAGES. Where the defendant agreed to sell certain mining
stock, held by him and the plaintiff jointly as promoters of a
mining corporation, for the purpose of meeting certain expenses,
but instead sold his individual stock, he would be liable on the
contract to the plaintiff for the damages sustained, but the plain-
tiff could not, in an action for an accounting, have the sale of
the individual stock declared a sale of the joint stock, and it is
error for the trial court to arbitrarily fix the value of such stock
sold, and give judgment for the plaintiff's share as for a sale
of joint stock.

Appeal from a judgment of the superior court for Spo-
kane county, Hon. A. J. Kellam, Judge *pro tempore,* upon
findings in favor of the plaintiff, after a trial before the
court without a jury, in an action for an accounting. Re-
versed.

*Crow & Williams,* for appellants.

*Munter & Jesseph,* for respondent.

FULLERTON, J.—The material facts in this case are as
follows: Some time prior to the month of June, 1902,
the plaintiff in this action received information from one
George Beaver that two certain claims, supposed to con-
tain coal, situated in the Nicola valley, in the province of
British Columbia, were subject to lease from the Cana-
dian government. With this information as their only
asset, on the 20th day of June, 1902, the plaintiff and the
said Beaver, by plaintiff as his agent, and one John F.
Firch *et al.,* by the defendant Russell G. Belden as their
agent, entered into a written agreement whereby said par-
ties agreed to form a corporation to own said claims, with
a capital stock of 1,500,000 dollars, divided into 1,500,-
000 shares of the par value of $1 each. It was further
agreed that 500,000 shares should be owned by the plain-
tiff and said Beaver jointly, and 500,000 shares by the

said Firch *et al.* jointly, and that plaintiff and Beaver should place 100,000 of their shares with a like amount owned by Firch *et al.*, to be sold to raise $1,000, to cover license fees, recording and advertising fees, and the expense of locating additional coal lands by the plaintiff and said Beaver, in which Firch *et al.* were to have a half interest.

On the 28th day of June, 1902, a second agreement was entered into between the plaintiff, and Beaver by plaintiff as agent, one John O'Connor in his own behalf, and said Firch and his associates by the defendant Worth Belden, as agent, whereby it was agreed that 500,000 shares should be set aside as treasury stock, 200,000 shares issued to said O'Connor, 200,000 shares sold at once to raise at least $1,000 cash, to be given to the plaintiff and said Beaver for the purpose of paying the license fees for the two claims, and advertising fees, etc., and that the balance of the stock should be divided, one-half to the plaintiff and Beaver jointly, and one-half to Firch and his associates jointly. This agreement further provided that,

"The parties of the second part [Firch and his associates] agree to raise $1,000, as above mentioned, as soon as possible, by a subscription of the 200,000 promotors' shares, and to proceed at once with the formation of the company, and the said parties of the second part further agree and promise to use their good influence in furthering the interests of the company, and to place the treasury stock with their eastern friends in order to raise the necessary capital to commence work on the property this summer."

It is conceded, and found by the court, that the defendant Worth Belden was a party in interest in both of these contracts, that he was the *"et al."* in the first agreement, and "the associates" in the second. It is further conceded that Beaver, O'Connor, and Firch dropped out

41-38 WASH.

by mutual consent of all parties, leaving only the plaintiff and the defendant Worth Belden of the original promoters. About the time of the execution of these two agreements, it is conceded, and found by the court, that the plaintiff and the defendant Worth Belden employed the defendant Russell G. Belden at a salary of $25 per week, to keep books and look after the business of the company generally. Thereafter the plaintiff and the defendant Worth Belden each donated to the defendant Russell G. Belden 25,000 shares of stock owned by them respectively. The defendant Russell G. Belden claims that he remained in the employ of the plaintiff and defendant Worth Belden up to November 1, 1902, under this contract. The plaintiff, on the other hand, claims that he remained in their employ up to the commencement of this action.

On the 25th day of November, 1902, a third agreement was entered into, reciting the location of the coal claims by the plaintiff, the formation of the corporation, and the setting aside of the 200,000 shares for the purpose hereinbefore mentioned. The agreement then proceeds as follows:

"Whereas said party of the second part [the defendant Russell G. Belden] has sold part of said 200,000 shares of stock, and raised said $1,000, and said expenses aforesaid have been fully paid, and said party of the second part has rendered valuable services in the interest of said company and said first party, and agreed to continue his services and efforts in the furtherance of the interests of said parties in the sale of the balance of the 200,000 shares

"Now, Therefore, in consideration of the premises and the covenants herein contained, it is hereby mutually agreed, by and between the parties hereto, that 500,000 shares of the stock of said company be set aside as treasury stock; the remaining 1,000,000 shares, being promoters' stock, to be divided and disposed of as follows:

400,000 shares thereof to S. Andrew Hartman; 400,000 shares to Russell G. Belden; said parties are to share equally in the net proceeds of the sale of the 200,000 shares aforesaid, after the payment of said expenses."

This agreement was signed by the plaintiff and the defendant Russell G. Belden, but it is conceded that, in signing the same, the defendant Russell G. Belden acted as agent or trustee for the defendant, Worth Belden, and the court so finds.

Of the 200,000 shares to be sold to raise the $1,000 to defray expenses, etc., 105,000 shares were given various parties as an inducement to become trustees of the corporation, and 25,000 shares were given to one Cowan, by the mutual consent of all parties concerned, thus leaving 70,000 shares of the 200,000 to be sold, under the agreements hereinbefore mentioned. Of this 70,000 shares, the defendant Russell G. Belden sold 25,855 shares, and received therefor the sum of $2,262.50, of which sum he necessarily and properly disbursed the sum of $1,800.47, exclusive of his salary. In addition to the last mentioned sales, sales were made of the individual stock of the defendant Worth Belden, and of the individual stock of the defendant Russell G. Belden, in a sufficient amount to make the total sales exceed 70,000 shares. Nearly all the individual stock of the defendant Worth Belden which was thus sold was transferred in payment of pre-existing indebtedness owed by the said Worth Belden, for which no payments were in fact made or received.

The complaint in this action set forth the above facts in part, and, after charging fraudulent acts of various kinds, alleged that the defendants had sold more than 95,000 shares out of the 200,000 shares to be sold, at a price exceeding $14,000, and that they had failed to account to

the plaintiff therefor.   The prayer of the complaint is for an accounting, etc.

The court below found that sales had been made, from the balance of the 200,000 shares to be sold, to the amount of 25,855 shares, for the sum of $2,262.50, and that the necessary expenses were $1,800.47 as hereinbefore stated. The court further found that sales were made of the individual stock of the defendants, in the manner hereinbefore. stated, in a sufficient amount to make the total sales and transfers of stock of all kinds exceed the 70,000 shares remaining of the 200,000 shares to be sold.   The court thereupon fixed an arbitrary valuation of eight and three-fourths cents per share, on a sufficient number of the shares of the individual stock of the defendants which had been sold, to make up the entire 70,000 shares of the 200,-000 which remained undisposed of, added this to the sum received on account of the sales of the 25,855 shares here-tofore mentioned, deducted from this the $1,800.47 for expenses, and rendered a joint and several judgment against the defendants for one-half of the sum remaining, less what the plaintiff had already received.   From this judgment the defendants appeal.

After a painstaking examination of the record in this case, we are wholly at a loss to know upon what theory the respondent is proceeding, or upon what theory the court reached the conclusion announced in its judgment.   The appellants contend that the relationship that existed between the respondent and the appellant Worth Belden, under the facts heretofore stated, was that of partners. We deem it unnecessary to determine that question on this appeal, though we are of opinion that at least some of the elements of a copartnership are lacking.   The record leaves no room for doubt, however, as to the relationship that existed between the appellant Russell G. Belden, on the one

hand, and the appellant Worth Belden and the respondent, on the other hand. The court finds as a fact that the first named appellant was in the employ of the last named appellant and the respondent at a salary of $25 per week, but as a conclusion of law, finds that the relation of principal and agent existed between the respondent and the appellants—the former being the principal and the latter the agents. This legal conclusion is manifestly erroneous. As a matter of fact, and as a matter of law, the appellant Russell G. Belden was the agent or servant of the respondent and the other appellant, and whatever duty he owed them he owned them jointly; whatever right of action they have against him for a breach of that duty is a joint action, and not a severable one. The objection to a judgment against him in this action is not based upon a defect of parties, which might be waived, but upon a fatal variance between the allegations and the proofs, which is tantamount to a total failure of proof. The complaint alleges a contract between the respondent and the appellants jointly; the proof shows a contract between the appellant Russell G. Belden and the respondent and the appellant Worth Belden jointly. This is a failure of proof under Bal. Code, § 4951. See, *Thompson v. Stetson*, 15 Neb. 112, 17 N. W. 368; *Cotes v. Campbell*, 3 Cal. 191; *Stearns v. Martin*, 4 Cal. 227; *Noonan v. Nunan*, 76 Cal. 44, 18 Pac. 98.

As to the appellant Russell G. Belden, therefore, the respondent has wholly failed to make out a case. The same result follows as to the appellant Worth Belden. Assuming, without deciding, that it was the duty of the appellant Worth Belden to sell the 200,000 shares, agreed to be sold, before disposing of any of his own stock, a sale of his individual stock would constitute a mere breach of that contract, for which an action would lie. The meas-

ure of damages would be the loss sustained by the respondent by reason of the breach. If the stock had a market value, and that market value increased, the respondent would be the gainer by the breach. But, in any event, the damages which he would be entitled to recover would only equal his loss occasioned by the breach. The action of the court, in converting a sale of one kind of stock into a sale of another kind, and fixing an arbitrary valuation thereon, and giving judgment for one-half the total value of the stock, while the stock itself remained intact, was wholly unwarranted. There was a total failure of proof as to the material allegations of the complaint.

The judgment is, therefore reversed, with directions to dismiss the action.

MOUNT, C. J., DUNBAR, and HADLEY, JJ., concur.

RUDKIN, ROOT. and CROW, JJ., took no part.